Ex parte Glen WILBANKS, Relator.

No. 07–86–0215–CV.

Court of Appeals of Texas, Amarillo.

Dec. 15, 1986.

William R. McKinney, Amarillo, for relator.

Paul H. Williamson and W.F. Countiss, Culton, Morgan, Britain & White, Amarillo, for respondent.

Before REYNOLDS, C.J., and DODSON and BOYD, JJ.

REYNOLDS, Chief Justice.

By this original habeas corpus proceeding, relator Glen Wilbanks seeks relief from a judgment of contempt, including his discharge from commitment to the Potter County jail, for failure to pay child support. Relator was admitted to bail to await the determination of the validity of his contempt adjudication. Upon the determination that the judgment of contempt is not vulnerable to the attacks relator makes upon it, the habeas corpus relief will be denied.

The marriage of relator and Janice Wilbanks, now Janice Wilbanks Sharp, was dissolved on 10 March 1971, and relator was ordered to pay $50 per month for the support of their minor child until she shall reach the age of 18, which would occur on 22 July 1985. On 20 June 1985, Janice Wilbanks Sharp moved the trial court to adjudge relator in contempt for not making any payment for the support of the child, and to render a judgment against him for the amount of arrearage owed.

At the 19 August 1985 hearing set on Janice's motion, relator, albeit served with process prior thereto, did not appear either in person or by counsel. Janice's counsel responded to the court's inquiry as to relator's presence by saying:

No, he is not. He has gone back to Arizona, as far as we know. What we are asking for today will be just a judgment for ten years' worth of child support.

Then, hearing the evidence, the court rendered judgment, signed on 20 August 1985, decreeing that Janice do have and recover from relator the sum of $8,625, together with attorney's fees of $500 and interest. The decretal portion of the judgment is silent with respect to the matter of contempt.

Thereafter on 9 January 1986, Janice filed another motion, requesting the court to enforce by contempt its 10 March 1971 order for child support since relator had failed to make the payments ordered. Subsequently on 4 September 1986, after relator's court appearance was secured by a writ of attachment, the court heard the contempt motion.

By its judgment rendered that day, the court adjudged relator to be in contempt of court for failing to pay child support, and assessed his punishment at confinement in jail for three days and thereafter until he has paid the $8,625 child support arrearage. By his habeas corpus proceeding, relator makes a five-point attack on the contempt judgment.

■ Since relator's habeas corpus action is a collateral attack on the contempt judgment, he cannot be relieved of the judgment unless it is void. *Ex parte Dustman*, 538 S.W.2d 409, 410 (Tex.1976). Initially, relator submits that the judgment is void for the reason that the trial court was without jurisdiction to hold him in contempt on the motion filed 9 January 1986. This obtains, he argues, because under the principle announced in cases, such as *In Interest of Brecheisen*, 694 S.W.2d 438 (Tex. App.—Dallas 1985, writ dism'd), the trial court lost continuing jurisdiction on 22 July 1985, when the child became 18, to enforce unpaid child support in proceedings commenced thereafter.

On the other hand, Janice responds that her 20 June 1985 motion was filed, and hence her contempt action was commenced, prior to the date the child reached 18; thus, under the authorities cited by relator, the court had jurisdiction to render its contempt judgment on her timely-filed motion. Janice's response is not relevant. She did not reurge her 20 June 1985 motion as the basis for the court's contempt judgment; instead, she filed a contempt motion on 9 January 1986 as the predicate for the judgment rendered. Then, Janice's response offers no reason for overruling relator's first point of error.

Yet, apparently aware of the principle followed in *Brecheisen* and like cases, the Legislature, purposively enhancing the effectiveness and timeliness of the enforcement of child support obligations, amended the Family Code by adding new provisions, effective 1 September 1985. Act of June 3, 1985, ch. 232, § 1, *et seq.*, 1985 Tex.Gen. & Spec.Laws 1158, 1158–1172. One of the new provisions, section 14.40, provides for enforcement by contempt of child support orders and, in a subsection, specifies:

> (b) Time Limitations. The court retains jurisdiction to enter a contempt order if a motion for contempt for failure to comply with a court's child support order is filed within six months after:
>
> > (1) the child becomes an adult; or
> >
> > (2) the date on which the child support obligation terminates pursuant to the decree or order or by operation of law.

Tex.Fam.Code Ann. § 14.40(b)(1), (2) (Vernon 1986).

Notwithstanding the legislation, relator maintains his position that the trial court lost jurisdiction of the contempt matter on 22 July 1985, when the child became 18 and his obligation for her support terminated pursuant to the divorce decree, which was prior to the effective date of section 14.40. Therefore, he reasons, the new amendment is inapplicable in this situation. Moreover, he insisted on submission, to subject him to its operation will violate the constitutional prohibition against retroactive laws. Relator's position is not well-taken.

Section 14.40(b) of the legislation does not impose a legal liability on relator to support his child; that liability existed at law when the court fixed his liability at $50 per month. Rather, the section provides a definitive time within which the enforcement of the existing liability by contempt can be effected. As such, the section does not affect substantive rights; it merely affects the remedy by defining the limitation period during which the pre-existing substantive rights may be enforced.

It is beyond dispute that laws which affect only the remedy, such as providing a limitation period, for enforcing substantive rights do not come within the scope of the constitutional provision against retroactive laws. *Doran v. Compton*, 645 F.2d 440, 446 (5th Cir.1981). The principle is applicable to remedial statutes governing enforcement of the legal liability for child support. *Harrison v. Cox*, 524 S.W.2d 387, 391–92 (Tex.Civ.App.—Fort Worth 1975, writ ref'd n.r.e.); *Du Pre v. Du Pre*, 271 S.W.2d 829, 831–32 (Tex.Civ. App.—Dallas 1954, no writ). Then, as a purely remedial statute governing the time of enforcing the existing legal liability for child support by contempt, section 14.40(b) is not an ex post facto law.

It follows that since the contempt motion was filed within six months after the date on which relator's child support obligation terminated pursuant to the divorce decree, the trial court had jurisdiction, by virtue of section 14.40(b), to render the contempt judgment. Therefore, the judgment is not void for want of jurisdiction by the court. The first point of error is overruled.

By his second point, relator contends that the contempt judgment violates article I, section 18, of the Texas Constitution, which commands: "No person shall ever be imprisoned for debt." If relator be correct, then the contempt judgment is void and he is entitled to habeas corpus relief. *Ex parte Weatherly*, 605 S.W.2d 661, 663 (Tex. Civ.App.—Amarillo 1980, no writ); *In re Roberts*, 584 S.W.2d 925, 926 (Tex.Civ.App. —Dallas 1979, no writ).

In presenting his contention, relator points out that he has been held in contempt for not paying the same arrearage that previously had been reduced to judgment. From this, he concludes, on the authority of *Ex parte Harwell*, 538 S.W.2d 667 (Tex.Civ.App.—Waco 1976, no writ), that he has been incarcerated for his failure to pay the judgment debt. However, neither the conclusion nor the authority for it is persuasive.

Although *Harwell* holds that the judgment for child support arrearage is a debt and, based on that holding, further holds that incarceration for contempt for failure to pay it runs afoul of the constitutional prohibition against imprisonment for debt, which voids the contempt judgment, 538 S.W.2d at 671, the Supreme Court has refused to subscribe to the conclusion that the judgment for arrearage is a debt. *Smith v. Bramhall*, 563 S.W.2d 238, 239 (Tex.1978). Absent the accreditation of *Harwell's* primary holding, the subsequent holdings based thereon are groundless. Moreover, a better reasoned authority, *Ex parte Shaver*, 597 S.W.2d 498 (Tex.Civ. App.—Dallas 1980, no writ), holds that even though the amount of child support arrearage may be reduced to judgment, neither that judgment nor the constitutional prohibition against imprisonment for debt is a bar to enforcing the child support order by contempt and confinement until the arrearage is paid. This results because the natural and legal duty of a parent to support his child is not a debt, but arises from that relationship. *Id.* at 500–01.

The court's contempt judgment makes it clear that relator was not held in contempt for failure to pay the judgment for arrearage; rather, he was adjudged to be in contempt for failing to pay the child support as ordered in the divorce decree. Consequently, under the adopted rationale and holdings of *Shaver*, the contempt judgment resulting in relator's confinement does not violate the constitutional prohibition of imprisonment for debt. The second point of error is overruled.

With his third and fourth points, relator contends that the contempt judgment is erroneous because the contempt action is barred by his pleaded defenses of res judicata and double jeopardy to the motion for contempt. In advancing the contention, relator cites, in this order, *Ex parte Harwell, supra, Whitley v. Whitley,* 566 S.W.2d 660 (Tex.Civ.App.—Beaumont 1978, no writ), and *Frank v. Reese,* 594 S.W.2d 119 (Tex. Civ.App.—Houston [1st Dist.] 1979, no writ), for the principle that once a party is tried and released in a contempt matter, he cannot be tried in a separate proceeding based on the same unpaid support amount if he pleads former jeopardy and res judicata. The principle applies to him, relator argues, for the reason that at the 19 August 1985 hearing, Janice made an election as to her remedies and, having received and accepted the benefits of the judgment for arrearage, she could not pursue any further action for contempt. The contention is indefensible.

■ The *Whitley* court viewed the remedies of contempt and judgment for arrearage to be dependent upon a finding of delinquency in child support payments which, once determined on a contempt motion, caused the judgment rendered thereon, unobjected to and not appealed, to bar the remedy of a motion for judgment on the arrearage. 566 S.W.2d at 662. However, the *Whitley* view was not credited by the *Frank* court which, quoting with approval the case holdings that the remedies operate independently of each other as well as concurrently, found no bar to the concurrent operation of both remedies. 594 S.W.2d at 122–23. The independent operation of the two remedies on the same delinquency applies to this original proceeding to invoke the sounder and more reasonable rule that the remedy of a judgment for arrearage does not exclude enforcement of the same obligation by contempt. *Ex parte Shaver, supra,* at 500. Thus, the judgment for arrearage does not, in and of itself, bar, upon pleas of former jeopardy and res judicata, the prosecution of the later motion for contempt.

■ Still, implicit in relator's contention is the further question whether the judgment for arrearage is res judicata of the issue of contempt that was pleaded in the motion on which the judgment was rendered. The silence of the judgment on the issue of contempt invites the inquiry whether the silence invokes the presumption, announced in *North East Independent School District v. Aldridge,* 400 S.W.2d 893, 897–98 (Tex.1966), that the issue was impliedly disposed of by the judgment. But the presumption is not viable under this record. This follows because the judgment for arrearage is a default judgment, *see* Rules 239, 243, Texas Rules of Civil Procedure, to which the *Aldridge* presumption does not apply, *Houston Health Clubs, Inc. v. The Honorable First Court of Appeals,* 722 S.W.2d 692 (Tex. 1986), and, furthermore, because the record shows that the contempt issue was not disposed of by the judgment. *See Allen v. Allen,* 717 S.W.2d 311, 312 (Tex.1986).

In his brief, relator concedes that the trial court refused to take action on the earlier motion for contempt, and correctly so, for the recorded absence of relator from the hearing forestalled the court's determination of the contempt matter. *Ex parte Johnson,* 654 S.W.2d 415, 422 (Tex. 1983). Thus, the judgment for arrearage is not conclusive of the contempt issue which could not have been adjudicated in the hearing. *Davis v. First Nat. Bank of Waco,* 139 Tex. 36, 161 S.W.2d 467, 471 (1942). Beyond that, the "asking for ... just a judgment for ... child support" at the beginning of the hearing properly excluded the issue of contempt from the court's consideration with the result that the judgment rendered was not res judicata of the issue in the subsequent contempt proceeding. *White v. White,* 149 S.W.2d 1031, 1033–34 (Tex.Civ.App.—Waco 1941, writ ref'd).

Under this analysis, the pleaded defenses of res judicata and double jeopardy present no bar to the subsequent motion for con-

tempt. The third and fourth points of error are overruled.

Relator utilizes his last point, his fifth one, to contend that the court erroneously held him in contempt since there is no evidence to support a finding that he was able to make the support payments and that his disobedience of the support order was willful. The same contention was upheld by a majority of the panel deciding *Ex parte Lopez*, 710 S.W.2d 948, 955 (Tex.App. —San Antonio 1986, no writ), the source for relator's point.

■ In *Lopez*, the accused contemner was held in contempt on proof that he failed to comply with an order to pay child support payments, and committed to jail for 30 days and thereafter until the amount of arrearage was paid. The majority of the *Lopez* court rationalized, in brief, that because contempt proceedings are inherently criminal proceedings, the contempt cannot be established in the absence of proof beyond a reasonable doubt of the accused's guilt, which must include proof of his ability to pay the support payments he failed to pay. Conceptually, then, *Lopez* imposes a burden of proof to show beyond a reasonable doubt (1) the existence of an order for the accused to pay child support, (2) his failure to pay, and (3) his ability to pay. But, because that burden of proof is at odds with the burden otherwise authoritatively fixed, *Lopez* will not be followed in this respect.

Long settled, and unquestioned until *Lopez*, is the principle that a prima facie case of contempt for failure to pay child support is shown by proof of (1) the existence of an order to pay child support, and (2) the failure to make the payments ordered. *Ex parte Kollenborn*, 154 Tex. 223, 276 S.W.2d 251, 254 (1955); *Ex parte Burroughs*, 687 S.W.2d 444, 446 (Tex.App.— Houston [14th Dist.] 1985, no writ); *Ex parte Swearingen*, 574 S.W.2d 585, 587 (Tex.Civ.App.—Houston [14th Dist.] 1978, no writ); *Whatley v. Whatley*, 493 S.W.2d 299, 303 (Tex.Civ.App.—Dallas 1973, no writ). Thus, the ability to make the payments ordered is not an element of proof of

the contempt charged; instead, once nonpayment is evidenced, proof of the involuntary inability to make the payments is a valid defense to the contempt charged, *Ex parte Johnson, supra,* and being a defense, the burden to show the inability is upon the accused. *Ex parte Kollenborn, supra; Ex parte Padfield*, 154 Tex. 253, 276 S.W.2d 247, 251 (1955); *Ex parte Cummings*, 610 S.W.2d 238, 240 (Tex.Civ.App. —Amarillo 1980, no writ). To prove the defense, the accused must conclusively establish his inability to pay each payment as it accrued. *Ex parte Kollenborn, supra; Ex parte Cummings, supra.*

Consequently, it is concluded that, contrary to *Lopez*, the burden to prove contempt for failure to make child support payments previously ordered does not include the obligation to prove beyond a reasonable doubt the ability of the accused to pay. The fifth point is overruled.

The judgment for contempt has not been shown to be void for the reasons advanced and, accordingly, the habeas corpus relief sought must be denied. The relator, Glen Wilbanks, is remanded to the custody of the Sheriff of Potter County, Texas.