**Affirmed and Memorandum Opinion filed August 4, 2022.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-21-00046-CV

---

## IN THE INTEREST OF L.A.F., A CHILD

---

**On Appeal from the 247th District Court
Harris County, Texas
Trial Court Cause No. 2015-52606**

---

## MEMORANDUM OPINION

Appellant Tom Freijo appeals a final judgment ordering him to make retroactive child support payments to appellee Veronica Rivera for their child L.A.F. In three issues that we treat as two, Freijo argues that: (1) the petition filed in the trial court by appellee the Office of the Attorney General (OAG) was deficient; and (2) the trial court erred by awarding retroactive child support. We affirm.

### I. BACKGROUND

L.A.F. is currently twenty years old, and Freijo does not dispute that he is L.A.F.'s father.

On September 8, 2015, the OAG filed a Uniform Interstate Family Support Act (UIFSA) petition seeking retroactive child support. Attached to the petition was federal form OMB 0970-0085, filled out by Veronica Rivera, L.A.F.'s mother; the form contained Rivera's general testimony concerning the case, her monthly expenses, and financial information for Freijo and Rivera. In October 2015, Freijo was served with citation of the suit. In December 2015, Freijo filed an answer and requested that the trial court deny the OAG's petition. In August 2016, Freijo filed a counter-petition to adjudicate parentage, asserting that it would be in L.A.F.'s best interest to appoint Freijo as joint managing conservator with the exclusive right to designate the primary residence of the child.

In November 2020, the trial court held a hearing on the OAG's petition and Freijo's counter-petition. According to the OAG, the issue before the trial court was whether the imposition of retroactive child support would create an undue financial hardship for Freijo. Based on the OAG's calculation sheet, it requested that Rivera be awarded $98,441.69 in retroactive child support. The OAG informed the trial court that for purposes of its calculations, the child support would end as of May 2020 because that is when L.A.F. graduated from high school.

Freijo testified that he is the biological father of L.A.F., but that he only learned of his parentage in 2015 after he received the results from a genetic test. Freijo acknowledged that Rivera and L.A.F. lived with him in 2008 and 2009 until "one day [he] came home from work and she [and L.A.F.] disappeared." Although L.A.F. used Freijo's last name when they lived together, Freijo claims that he did not believe he was L.A.F.'s father at the time because with "[w]hat [Rivera] said and how she acted and what she did over many years made no sense to me, so I never believed anything she said." Freijo further claimed that he distrusted

2

Rivera's claims that he was L.A.F.'s father because she was "manipulative" and "everything that came out of her mouth was a lie." Freijo testified that after Rivera and L.A.F. left in 2009, the next time he heard from them, other than a few "nasty emails," was in 2015 when he was subpoenaed to appear in court for a paternity test. Freijo was also questioned about diapers he sent to Rivera shortly after L.A.F.'s birth:

[Question]:     Mr. Freijo, isn't it true that right after the child was born, you sent diapers to Ms. Rivera?

[Freijo]:       Yes.

[Question]:     Why would you send her diapers if you didn't think this was your child?

[Freijo]:       Because it might have been and that's the kind of person I am, a fool.

After learning that he was L.A.F.'s father, Freijo testified that he sought to negotiate a paternity agreement in which he would receive parental rights in exchange for his payment of child support to Rivera. According to Freijo, two years prior to the hearing, he used his master's degree in toxicology to work as a chemist, but the company was sold, and he has not been able to find gainful employment since then. Freijo further clarified that his only income is $1,063 a month he earns as "dividend income." Currently, Freijo lives with his 82-year-old mother and takes care of her. Freijo testified that if he is ordered to pay the child support arrearages as requested by the OAG, it would create a financial hardship on him because his only income is dividend income of $1,063 per month.

When questioned about his current assets, Freijo admitted that he has three bank accounts, a 401k account, and a Roth IRA account; however, he asserted that he does not know how much money he has in any of those accounts because the

value is always fluctuating. He also admitted to owning eight rental properties. Freijo testified that in the three years preceding the hearing, he had sold two rental properties: one sold for $180,000 and the other sold for $160,000.

At the close of the hearing, the trial court awarded Rivera retroactive child support in the amount of $98,441.69. The trial court ordered that amount to be paid within two years at $4,101.74 per month. On January 25, 2021, the trial court issued an order incorporating its rendition of judgment as declared at the hearing. Freijo filed a timely appeal.

## II. DEFICIENT PLEADINGS

In his first issue, Freijo argues that the OAG's pleadings were deficient because they failed to provide Freijo's "full biographic information," and the pleadings failed to provide L.A.F.'s social security number. *See* Tex. Fam. Code Ann. § 159.311(a).

### A. APPLICABLE LAW

"[A]ny claimed 'defect, omission or fault in pleading' must be in writing. An oral motion objecting to pleadings does not comply with the reqirements [sic] of the rules." *Gonzales v. Galveston Indep. Sch. Dist.*, No. A14-92-00742-CV, 1993 WL 64135, at *3 (Tex. App.—Houston [14th Dist.] Mar. 11, 1993, writ denied) (quoting Tex. R. Civ. P. 90); *Peek v. Equip. Serv. Co. of San Antonio*, 779 S.W.2d 802, 805 (Tex. 1989) (concluding that in the absence of special exceptions, "a plaintiff may proceed to trial, however defective its allegations"); *Retzlaff v. Tex. Dep't of Criminal Justice*, 135 S.W.3d 731, 737 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (observing that objections to an allegedly defective pleading "must be made in writing before the judgment is signed or the objection is deemed waived"); *see also Hartwell v. Lone Star, PCA*, 528 S.W.3d 750, 765 (Tex. App.—

Texarkana 2017, pet. dism'd) (concluding that every objection to defects in the pleading is waived unless "it is specially pointed out by a special exception in writing and brought to the attention of the trial court before the complained-of judgment or order is signed") (internal quotations omitted); *UV Logistics, LLC v. Patsfield*, No. 01-20-00191-CV, 2022 WL 963276, at \*11 (Tex. App.—Houston [1st Dist.] Mar. 31, 2022, no pet.) (mem. op.) (concluding issue was waived on appeal because the record did not contain a ruling on special exception).

## B.   APPLICATION

Freijo did not file any special exceptions to the OAG's petition. Freijo orally moved for judgment as a matter of law on the basis that the petition did not contain Freijo's social security number. This was insufficient; it was Freijo's burden to file a written special exception. *See* Tex. R. Civ. P. 90; *Gonzales*, 1993 WL 64135, at \*3. Moreover, Freijo failed to secure a ruling on his objection to the pleading. *See Patsfield*, 2022 WL 963276, at \*11. Thus, Freijo has not preserved for appellate review his challenge to the adequacy of the pleadings. *See Peek*, 779 S.W.2d at 805; *Hartwell*, 528 S.W.3d at 765; *Retzlaff*, 135 S.W.3d at 737. We overrule Freijo's first issue.

## III.   RETROACTIVE CHILD SUPPORT

In his second issue, Freijo argues that the trial court erred in denying his motion for judgment as a matter of law and in awarding retroactive child support.

## A.   STANDARD OF REVIEW & APPLICABLE LAW

We review a trial court's decision to grant or deny a motion for judgment as a matter of law under the legal sufficiency standard of review. *See City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005). A trial court properly denies a motion for judgment as a matter of law if, looking at all the evidence in the light most

favorable to the fact challenged or the finding found by the jury, a reasonable trier of fact could have formed a firm belief or conviction that the fact or finding was true. *Id.*

We review a trial court's award of retroactive child support for an abuse of discretion. *In re A.B.*, 368 S.W.3d 850, 854 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

> A trial court does not abuse its discretion when some evidence of a substantive and probative character supports its order. When, as in the present case, the trial court does not file findings of fact and conclusions of law, we imply the trial court made all findings necessary to support its judgment and will uphold those findings if supported by sufficient evidence.

*Id.* (internal citations omitted).

Regarding the admissibility of evidence in UIFSA suits, Texas Family Code § 159.316(b) states:

> (b)  An affidavit, a document substantially complying with federally mandated forms, or a document incorporated by reference in an affidavit or document, that would not be excluded under the hearsay rule if given in person, is admissible in evidence if given under penalty of perjury by a party or witness residing outside this state.

Tex. Fam. Code Ann. § 159.316(b); *see Atty. Gen. v. Litten*, 999 S.W.2d 74, 78 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (observing that the purpose of the statute is to "eliminate as many potential hearsay problems as possible in interstate litigation because usually the out-of-state party and that party's witnesses do not appear in person at the hearing").

Regarding the calculation of retroactive child support, Texas Family Code § 154.131 provides:

(b) In ordering retroactive child support, the court shall consider the net resources of the obligor during the relevant time period and whether:

(1) the mother of the child had made any previous attempts to notify the obligor of his paternity or probable paternity;

(2) the obligor had knowledge of his paternity or probable paternity;

(3) the order of retroactive child support will impose an undue financial hardship on the obligor or the obligor's family; and

(4) the obligor has provided actual support or other necessaries before the filing of the action.

Tex. Fam. Code Ann. § 154.131(b).

## B. APPLICATION

Freijo complains on appeal that there was no witness testimony, tangible evidence, or affidavits presented to support the award of retroactive child support. Rivera did not testify in person at the trial. However, as referenced above, the OAG's petition contained admissible evidence in the form of Rivera's testimony on the federally promulgated general testimony form. *See id.* § 159.316(b). In the form, Rivera stated:

> I opened the case five years ago. I am seeking retroactive support from the State of Texas. I have provided Tom Freijo's information (work address, social security number) to expedite process. I had to "exempt" myself for a couple of months from taxes in order to get the extra money to make it through the month.

The form also detailed Rivera's income and expenses.

In addition to the testimony contained in the form, the trial court's award of retroactive child support is supported by evidence of the factors listed in

7

§ 154.131(b) of the Texas Family Code. *See id.* Concerning the first two factors—whether the mother of the child had made any previous attempts to notify the obligor of his paternity or probable paternity and whether the obligor had knowledge of his paternity or probable paternity—Freijo acknowledged that when Rivera and L.A.F. lived with him, he allowed L.A.F. to use his last name. Freijo also admitted that he sent diapers to Rivera shortly after L.A.F.'s birth because he realized that the child might be his. This evidence supports Freijo's knowledge of probable paternity. *See id.* § 154.131(b)(1), (2).

Regarding whether ordering Freijo to pay child support would cause an undue financial burden, Freijo testified that he had a master's degree in toxicology, a 401k account, a Roth IRA account, and eight active investment properties, seven of which were currently rented.[1] *See id.* § 154.131(b)(3).2RR30-33. He further testified that in the last several years, he sold one property for $180,000 and another for $160,000. Based on this testimony, the court could have concluded that an order of retroactive child support would not impose an undue financial burden on Freijo.

The last factor concerns whether Freijo has provided actual support or other necessaries before the filing of the action. *See id.* § 154.131(b). Other than the diapers he sent to Rivera shortly after L.A.F.'s birth, and Freijo's testimony that Rivera and LAF lived with him from 2008 through 2009, there is nothing in the record to suggest that Freijo provided any other support for L.A.F. prior to the filing of this action in 2015. Freijo did testify briefly concerning plane tickets he purchased so that L.A.F. could come visit him, but according to Freijo, that occurred in either 2018 or 2019.

---

[1] Freijo testified that the tenant of the eighth investment property stopped paying rent "since the COVID started and they left two months ago so, basically, it's been vacant since January, so no rent has been paid."

Viewing all of the evidence in the light most favorable to the OAG and Rivera, a reasonable trier of fact could have formed a firm belief or conviction that the factors of Texas Family Code § 154.131(b) supported the award of retroactive child support. *See id.* § 154.131(b); *City of Keller*, 168 S.W.3d at 823. Accordingly, the trial court's denial of the motion for judgment as a matter of law was proper. *See City of Keller*, 168 S.W.3d at 823. Additionally, the trial court did not abuse its discretion in awarding retroactive child support because the evidence presented in the federal form and through Rivera's own testimony supported the award of retroactive child support. *See In re A.B.*, 368 S.W.3d at 854. We overrule Freijo's second issue.

## IV.   CONCLUSION

We affirm the trial court's judgment.


/s/     Margaret "Meg" Poissant
Justice


Panel consists of Justices Wise, Poissant, and Wilson.